UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BY EQUITIES, LLC | CIVIL ACTION |
| VERSUS | No.: 20-1290 |
| | C/W: 20-2540 |
| CARVER THEATER PRODUCTIONS, LLC, ET AL. | SECTION: "J"(5) |

Applies to: 20-1290

## ORDER AND REASONS

Before the Court are two *Motions for Summary Judgment*. The first was filed by Plaintiff BY Equities, LLC **(Rec. Doc. 98).** Defendants Carver Theater Productions, LLC and Eugene Oppman have filed an opposition (Rec. Doc. 99), to which BY Equities has replied. (Rec. Doc. 108). Carver and Oppman have also filed a motion for summary judgment **(Rec. Doc. 122)**, which BY Equities has opposed (Rec. Doc. 124), and to which Defendants have replied (Rec. Doc. 128). Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that BY Equities' motion should be **GRANTED**, and Defendants' motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This matter arises out of the redevelopment of the Carver Theater in New Orleans. On January 29, 2015, Carver executed a promissory note ("the Note") in the original principal amount of $1,590,278.00, payable to the order of First NBC Bank ("FNBC"). The Note's maturity date absent demand was May 2, 2015. The Note was subsequently modified by a Change in Terms Agreement on August 28, 2015, which

1

increased the maximum principal indebtedness to $1,628,977.72 and extended the maturity date to February 1, 2016. The parties executed a Second Change in Terms Agreement on March 8, 2016, which extended the maturity date to December 5, 2016.

Eugene Oppman signed a Commercial Guaranty, which guaranteed all of Carver's indebtedness to FNBC, "now existing or hereafter arising or acquired, on an open and continuing basis." The Commercial Guaranty specifies that it is transferrable to any subsequent holders of Carver's indebtedness. The Note is also secured by a Commercial Security Agreement executed by Carver and granted to FNBC and its assignees. On April 28, 2017, FNBC was closed by court order. The FDIC was appointed as receiver of FNBC, vested with title to its assets, and granted managerial control of the failed bank. On October 18, 2017, the FDIC assigned the Note to OSK VII, LLC, which subsequently assigned the Note to Plaintiff on December 12, 2019. The Note matured on December 5, 2016. Carver concedes that the Note was not fully paid upon maturity, which placed it in default. Carver has not made any payments towards the balance of the Note since December 12, 2019. After issuing formal demand for payment, Plaintiff filed this suit against Carver and Oppman to collect the balance due under the Note and enforce its rights under the Commercial Guaranty and Commercial Security Agreement.

Subsequent to BY Equities' filing, Carver filed its own suit against FNBC and ACP NMTC Acquisition Company, L.L.C., asserting breach of a leverage loan note that was tied into Carver's multi-tiered redevelopment financing structure. *See Carver Theater Productions, LLC v. FNBC NMTC No. 1, LLC and ACP NMTC*

*Acquisition Company, L.L.C.*, No. 20-2540 (E.D. La. Sept. 17, 2020). As both actions arose out of an interlocking debt structure for the theater's redevelopment, the cases were consolidated. Parties to the later action have advised the Court of a settlement of all claims, leaving for consideration solely the original dispute over the Note. *See* Rec. Doc. 114 (ECF No. 20-1290).[1]

This Court previously denied a motion for summary judgment from BY Equities. *See* Rec. Doc. 31. Therein, this Court determined Defendants' affirmative defense of fraudulent inducement would benefit from additional discovery. Specifically, the Court ruled that "Defendants have demonstrated that some negotiation over tax credits between Defendants and FNBC likely occurred, and, if the results of such negotiations were memorialized in writing, Defendants have asserted fraudulent inducement as a plausible affirmative defense." In the motions for summary judgment now before the Court, both sides argue such discovery has proved their respective contentions.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a

---

[1] Within this action, Defendants also have made a third-party claim against Third-Party Defendants Ashton Ryan and Brad Calloway for bank fraud. *See* Rec. Doc. 20. Specifically, Defendants (and Third-Party Plaintiffs) Carver and Oppman request that any judgment in favor of BY Equities be recovered from Ryan and Calloway. *Id.* at 6.

dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

## DISCUSSION

Carver has conceded that it is in default of the Note that was assigned to Plaintiff. (Rec. Doc. 6 at ¶ 23). Therefore, summary judgment should be granted in favor of Plaintiff unless Defendants have asserted an affirmative defense that is supported by sufficient material facts.

Defendants bear the burden of proving any affirmative defense. *F.T.C. v. Nat'l Business Consultants, Inc.*, 376 F.3d 317, 320 (5th Cir. 2004). Parties' legal arguments mirror those previously before the Court. Defendants again insist that Carver was fraudulently induced into the loan by FNBC and Third-Party Defendants Ashton Ryan and Brad Calloway, who were acting individually and on behalf of FNBC. Specifically, Defendants argue Ryan and Calloway intentionally misrepresented to Defendants that state and federal tax credits would pay the Note. *See* Rec. Doc. 122-1 at 1–2. Defendants aver that Carver would not have executed the Note without these false misrepresentations. *Id.* at 2. In response, Plaintiff argues

that Defendants' fraudulent inducement defense is barred by the *D'Oench, Duhme* doctrine. *See* Rec. Doc. 124 at 5.

The *D'Oench, Duhme* doctrine prevents parties from "rely[ing] on an oral agreement between [a failed bank and its customer] as the basis for defenses or claims against the FDIC." *Lemaire v. FDIC*, 20 F.3d 654, 657 (5th Cir. 1994). This rule was codified in 12 U.S.C. § 1823(e)(1). The protections granted under the *D'Oench, Duhme* and § 1823(e)(1) have been extended to private parties that purchase the assets of insolvent banks from the FDIC. *See Porras v. Petroplex Sav. Ass'n*, 903 F.2d 379, 381 (5th Cir. 1990) (citation omitted); *C&C Inv. Properties, L.L.C. v. Trustmark Nat'l Bank*, 838 F.3d 655, 659 (5th Cir. 2016) (citation omitted). To overcome the *D'Oench, Duhme* doctrine—and, thereby, successfully plead the affirmative defense of fraudulent inducement—a borrower must show an agreement (1) in writing; (2) executed by bank and borrower contemporaneous with the transaction; (3) approved by the bank's board of directors, as reflected in meeting minutes; and (4) maintained continuously as an official bank record. 12 U.S.C. § 1823(e)(1).

Without consideration of the other elements, this Court previously determined Defendants failed to show the necessary writing. Nonetheless, Defendants were permitted to conduct further discovery in hopes of uncovering the missing documentation. Defendants now contend they have two supportive writings: (1) a 2012 FNBC credit memo and (2) Ryan's discovery admissions. Neither, however, provides the evidence necessary to surmount the *D'Oench, Duhme* doctrine.

Assuredly, the credit memo is a writing, but it is not the type specified by statute. Rather than an agreement between bank and lender, the document is an internal FNBC assessment. As such, it cannot be said to be "executed" by parties to the Note, providing signature lines only for Calloway and Ryan. *See* Rec. Doc. 122-6 at 2, 4. Even if Defendants' contention is accurate that the document was "signed or initialed by Carver, via Eugene Oppman[,]" *see* Rec. Doc. 128 at 2—and it is not clear that the redacted text contains such a signature—the document is still insufficient for fraudulent inducement purposes. For one, the credit memo predated the Note by thirty-one months. Accordingly, the credit memo was not "contemporaneously" executed. The Note agreement and modifications, moreover, make no reference to the credit memo, which arguably could draw the credit memo closer in time. *See* Rec. Docs. 1-2–1-4.

All that notwithstanding, the credit memo fails as a sufficient writing on a more fundamental level: it does not lift Defendants' obligation for the Note. Defendants highlight certain statements within the sixteen-page document to make their case. But they noticeably omit other statements that undercut the fraudulent inducement argument. For instance, Defendants reproduce the "Primary Source of Repayment" section, listing various "tax credit equity proceeds." *See* Rec. Doc. 122-6 at 2. Overlooked, however, is the next section, that of "Secondary Source of Repayment": "Guarantor support, liquidation of collateral." *Id*. Oppman and "Eugene Oppman, A Professional Optometry Corporation" are listed as the guarantors. *Id*. The multiple indebtedness mortgage on the Carver property is the first listed source of

6

collateral. *Id*. The credit memo also includes Guarantor and Collateral Analyses. *Id*. at 17. In sum, the credit memo does not limit repayment to tax credits.

Even more decisively, Ryan's discovery admissions cannot supply Defendants with the writing they seek. Out of concern for Ryan's then-pending criminal trial, the Court stayed this case for nearly two years. *See* Rec. Docs. 70 and 81. Following the conclusion of Ryan's trial, BY Equities moved unopposed to lift the stay. *See* Rec. Doc. 81. Ryan has refused to comply with discovery requests, citing Fifth Amendment concerns. In consideration of Defendants' *Motion to Deem Requests Admitted*, Magistrate Judge North recently determined that the unanswered discovery requests are "deemed admitted by operation of law under Federal Rule of Civil Procedure 36(a)(3)." Rec. Doc. 126. These admissions, Defendants aver, independently supply a fraudulent inducement writing.

In their motion before Judge North, Defendants highlighted four admissions:

- REQUEST FOR ADMISSION NO. 2 Admit that you represented to Eugene Oppman that the Promissory Note at issue in this litigation between First NBC Bank as the lender and Carver as the borrower would not have to be paid back by Carver.

- REQUEST FOR ADMISSION NO. 3 Admit that you represented to Eugene Oppman that he and Carver did not qualify for the loan [sic] resulted in the Promissory Note at issue in this litigation.

- REQUEST FOR ADMISSION NO. 4 Admit that you represented to Eugene Oppman First NBC Bank was making the loan that resulted in the Promissory Note at issue in this litigation to the tax credits and not Eugene Oppman or Carver.

- REQUEST FOR ADMISSION NO. 5 Admit that you represented to Eugene Oppman that the tax credits would pay back/off the loan that resulted in the Promissory Note at issue in this litigation.

7

These admissions, however, are neither writings themselves nor do they point to writings. At most, the "representations" are oral statements—precisely the type of agreements the *D'Oench, Duhme* doctrine prevents as a basis for claims or defense. *See Lemaire*, 20 F.3d at 657. The admissions, therefore, fail to provide the necessary writing. Further, Defendants point to no outstanding discovery that would provide such a writing. Thus, Defendants' fraudulent inducement defense fails under the *D'Oench, Duhme* doctrine. Summary judgment to Plaintiff BY Equities on the defaulted Note is appropriate.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff BY Equities, LLC's *Motion for Summary Judgment* **(Rec. Doc. 98)** is **GRANTED** and Defendants Carver Theater Productions, LLC and Eugene Oppman's *Motion for Summary Judgment* **(Rec. Doc. 122)** is **DENIED.**

**IT IS FURTHER ORDERED** that, as the prevailing party, Plaintiff BY Equities, LLC submit a proposed judgment to the Court no later than **September 27, 2024**.

**IT IS FURTHER ORDERED** that other outstanding motions—*Motion to Stay Pending Arbitration* **(Rec. Doc. 82)**, *Motion for Summary Judgment* **(Rec. Doc. 96)**, *Motion to Stay Case* **(Rec. Doc. 97)**, *Motion to Stay* **(Rec. Doc. 109)**, *Motion in limine to Exclude the Testimony of Nicolo Pinoli, CPA* **(Rec. Doc. 118)**—are **DISMISSED as moot**.

**IT IS FURTHER ORDERED** that no later than **October 21, 2024** Third-Party Plaintiffs Carver Theater Productions, LLC and Eugene Oppman and Third-Party Defendants Ashton Ryan and Brad Calloway file into the record memoranda on their respective positions on Third-Party Plaintiffs' pending claim. Parties should include discussion on the merits of any needed stay of this matter.

New Orleans, Louisiana, this 17th day of September, 2024.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE