UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BY EQUITIES, LLC | CIVIL ACTION |
| VERSUS | NO. 20-1290 |
| | C/W: 20-2540 |
| CARVER THEATER PRODUCTIONS, LLC ET AL. | SECTION: "J"(5) |
| Applies to: 20-1290 | |

## ORDER AND REASONS

Before the Court are Defendants Carver Theater Productions, LLC and Eugene Oppman's *Motion for Relief from Judgment/Reconsideration/New Trial Based on New Evidence* **(Rec. Doc. 159)** and Plaintiff BY Equities, LLC's opposition (Rec. Doc. 162), to which Defendants reply (Rec. Doc. 163). Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that Defendants' motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

For a second time in two months, Defendants move for reconsideration. This time the request is broader: Defendants assert newly discovered evidence should vacate a series of five Court orders. What Defendants insist remains a genuine issue of material fact in this April 2020-filed action is whether the repayment of a promissory note ("the Note") was limited to the proceeds of tax credits from the redevelopment of the Carver Theater.[1]

---

[1] Through their motion, Defendants also reurge their theory that Carver's default was caused by

1

Executed by Defendant Carver and guaranteed by Defendant Oppman, the Note bridged delays in other aspects of Defendants' financing agreement with First NBC Bank ("FNBC"). In an action consolidated to Plaintiff's suit on the Note, Defendants settled their claims against an FNBC-created entity as to the other aspects of their financing agreement. *See Carver Theater Productions, LLC v. FNBC NMTC No. 1, LLC and ACP NMTC Acquisition Company, L.L.C.*, No. 20-2540 (E.D. La. Sept. 17, 2020); *see also* Rec. Doc. 144 (Case No. 20-1290).

In this action, the Court previously found Defendants could not overcome the *D'Oench, Duhme* doctrine, which would require their repayment-from-tax-credits-alone argument to be found in an agreement (1) in writing; (2) executed by bank and borrower contemporaneous with the transaction; (3) approved by the bank's board of directors, as reflected in meeting minutes; and (4) maintained continuously as an official bank record. (Rec. Doc. 135 at 5–6 (citing 12 U.S.C. § 1823(e)(1)). Defendants now argue a Credit Memorandum, an Interoffice Memorandum, and related financial disclosures of Oppman—received from the Federal Deposit Insurance Corporation ("FDIC") on November 26, 2024 as an answer to Defendants' August 19, 2024

---

Plaintiff's prevention of the Note's extinguishment. (Rec. Doc. 159-1 at 9–15). As their reply clarifies, this argument primarily is made pursuant to the catchall, "any other reason" provision of Federal Rule of Civil Procedure 60(b)(6). (Rec. Doc. 163 at 7). Contending Plaintiff knew tax credits were the only repayment recourse, Defendants then conclude, "The newly discovered evidence shines a light on BY's unscrupulous actions. [FDIC assignee] OSK [VII, LLC], using BY's hubris and evil intent against it, was all too willing to go along with BY's conspiracy for its own benefit." (Rec. Doc. 159-1 at 10). To support this conspiracy conclusion, Defendants reproduce emails previously presented to—and rejected as sufficient fraud grounds by—this Court. (*See* Rec. Doc. 156). Motions for reconsideration should not be used to "re-litigate prior matters that . . . simply have been resolved to the movant's dissatisfaction." *See Voisin v. Tetra Techs., Inc.*, No. 08-1302, 2010 WL 3943522, at *2 (E.D. La. Oct. 6, 2010). Defendants provide no basis to reconsider this Court's rejection of their affirmative defense of fraud in the prevention of the extinguishing of the Note.

Freedom of Information Act ("FOIA") request—provides newly discovered evidence that surmounts the *D'Oench, Duhme* doctrine hurdle. Plaintiff opposes reconsideration.

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure do not expressly allow motions for reconsideration of an order. *Bass v. U.S. Dep't of Agric.,* 211 F.3d 959, 962 (5th Cir. 2000). The Fifth Circuit treats a motion for reconsideration challenging a prior judgment as either a motion "to alter or amend" under Federal Rule of Civil Procedure 59(e) or a motion for "relief from judgment" under Federal Rule of Civil Procedure 60(b). *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 173 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.,* 37 F.3d 1069, 1076 (5th Cir. 1994). The difference in treatment is based on timing. If the motion is filed within twenty-eight days of the judgment, then it falls under Rule 59(e). However, if the motion is filed later, it is governed by Rule 60(b). *Id.* In the present case, although contending that various motions should be vacated, Defendants' Motion for Reconsideration (Rec. Doc. 159) was filed more than twenty-eight days after the challenged judgment.[2] As a result, Defendants' motion is considered under the more stringent Rule 60(b) standard.

---

[2] Defendants correctly state that the instant Motion for Reconsideration was filed within twenty-eight days of the Court's denial of their previous Motion for Reconsideration. (Rec. Doc. 163 at 2). However, "[t]he federal rules do not provide for a motion requesting a reconsideration of a denial of a reconsideration." *Benson v. St. Joseph Reg'l Health Ctr.*, 575 F.3d 542, 547 (5th Cir. 2009). Although necessarily challenging the Court's November 18, 2024 denial as one domino within the line of their current request for cascading reconsideration, Defendants substantively challenge the Court's September Order and Reasons and related Judgment. (Rec. Docs. 135 and 140). Accordingly, the instant motion falls beyond the twenty-eight-day window and is governed by Rule 60(b).

Rule 60(b) provides that a court may reconsider an order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by reasonable diligence could not have been discovered in time to move under Rule 59(b); (3) fraud, misrepresentation, or other misconduct; (4) a void judgment; (5) the satisfaction, release, discharge, reversal, or need for equitable reconsideration of the judgment; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b). With newly discovered evidence, litigants must show that despite their diligence they would have been "powerless to unearth" the outcome-determinative evidence earlier. *Ferraro v. Liberty Mut. Fire Ins. Co.*, 796 F.3d 529, 535 (5th Cir. 2015).

A district court has considerable discretion to grant or deny relief under Rule 60(b), and its decision will be reversed only for an abuse of discretion. *Hesling v. CSX Transp., Inc.,* 396 F.3d 632, 638 (5th Cir. 2005). A district court abuses its discretion only if it bases its decision on an erroneous view of the law or clearly erroneous assessment of the evidence. *Id.*

## DISCUSSION

Defendants base their current Motion for Reconsideration on newly discovered evidence, namely, the FDIC's recent answer to Defendants' FOIA request. Before considering the substance of their argument, however, the Court fails to observe Defendants' compliance with Rule 60(b) requirements. Simply, Defendants make no showing that despite their reasonable diligence they could not have discovered this evidence sooner. Instead, Defendants apparently concede they did not think the 2015

memoranda were needed. In their opposition to Plaintiff's Motion for Summary Judgment, Defendants rest on a years-earlier FDIC response: "Defendants received documentation from the FDIC which, although it pertained to 2012 and not 2015, Defendants believed created a genuine issue of material fact preventing summary judgment." (Rec. Doc. 159-1 at 4).

The closest Defendants get to a reasonable-diligence argument is in their previous Motion for Reconsideration. Alerting the Court for the first time of an additional document request, Defendants complain of a motion for summary judgment ruling with discovery still pending. (Rec. Doc. 142-1 at 18–19). They also insist they "were planning to file a Motion for Contempt against OSK" for not complying with a subpoena for additional files. *Id.* As is clear from their attached proof, these discovery steps were taken in August 2024. (Rec. Docs. 142-13–14). Charting their actions taken, Defendants stress their hands were tied for half of this litigation: "As the Carver Defendants were seeking documentation to address *D'Oench Duhme*, this matter was stayed for 2 of the 4 years." (Rec. Doc. 155 at 2–5 (emphasis omitted)).

The Court knows of no bar to a FOIA request during stays of litigation. The FDIC's production of the 2015 memoranda, moreover, shows a nearly three-month timeline from request to response—a period that easily could have fallen earlier in this lengthy litigation. Most perplexingly, Defendants chose this litigation speed despite knowing the importance the Court placed on a written agreement. In November 2020, the Court observed: "Defendants have demonstrated that some

5

negotiation over tax credits between Defendants and FNBC likely occurred, and, if the results of such negotiations were memorialized in writing, Defendants have asserted fraudulent inducement as a plausible affirmative defense." (Rec. Doc. 31 at 7). Thus, Defendants' actions are less defensible than reconsideration arguments considered, and rejected, by the Fifth Circuit. In *Diaz v. Methodist Hospital*, for instance, the plaintiff moved for a new trial based on an affidavit that two testifying doctors inaccurately stated that a key medical test could not occur on a weekend. *Diaz v. Methodist Hosp.*, 46 F.3d 492 (5th Cir. 1995). Unmoved by the post-trial evidence, the Fifth Circuit concluded the plaintiff had five years to depose the affiant or otherwise challenge the doctors' statements: "While cognizant of Appellant's trusting nature, we believe a prudent litigant would independently investigate such a pivotal issue and be less than willing to adopt blindly the statements of the opposing party." *Id.* at 496.

Here, the conclusion is even clearer, as Defendants did not awake to the importance of the requested documentation, but were aware of their need to pursue it. Yet, they did not. The Court concludes Defendants were not reasonably diligent in this matter. As such, the memoranda are not of the newly-discovered type. More simply, the attached evidence is not a basis for a Rule 60(b) reconsideration.

Nonetheless, even if the memoranda could be considered, they fail to present a basis for lifting the *D'Oench, Duhme* doctrine. The attachments are a series of documents within FNBC's Carver Theater file. The first is a Credit Memorandum, which Defendants assert bears the redacted signatures of Oppman and FNBC

6

representative Brad Calloway.[3] Dated contemporaneous with the Note, the Credit Memorandum lists tax credits as the "primary source of repayment." (Rec. Doc. 159-4 at 1). In their cut-and-paste reproduction within their motion, Defendants omit the Note's "guarantors" ("In solido guarantees of Eugene Oppman, MD . . . and Eugene Oppman, A Professional Optometry Corporation"), "secondary source of repayment" ("Liquidation of collateral / then resell of the State Tax Credits by First NBC Bank"), and "collateral" ("UCC on all accounts, notes, and pledges receivable together with a pledge of general intangibles of the borrower, including but not limited to the tax credit equity proceeds of the State Historic, and State Live Performance Tax Credits."). *Compare id. with* Rec. Doc. 159-1 at 5.

An Interoffice Memorandum by Calloway follows. (Rec. Doc. 159-4 at 5). The one-page document provides additional detail to the Credit Memorandum, stating both that the Note "is expected to be repaid fully from" tax credits and that a tax credit "shortfall is not expected to occur." *Id.* However, in the event of payment shortfall, the memorandum observes "the personal cash flows of Dr. Eugene Oppman

---

[3] It is not clear that the Credit Memorandum bears Oppman's signature, as signature lines are only provided for the "Approving Officer" and an "Additional Approving Officer." (Rec. Doc. 159-4 at 1). The Fifth Circuit has considered the import of side agreements for *D'Oench, Duhme* purposes, though in different circumstances. In *Resolution Trust Corp. v. Oaks Apartments Joint Venture*, the Fifth Circuit held that lender-borrower agreements need not be confined to one document. *Resol. Tr. Corp. v. Oaks Apartments Joint Venture*, 966 F.2d 995, 999 (5th Cir. 1992). Therein, the defendant partnership entered into a promissory note and a separate guaranty—the latter limiting individual liability to 20% of the indebtedness. Although remanding for further fact development on the liability limitation, the appellate court found a side agreement, in and of itself, was not deceptive. In *Oak Apartments*, however, the court describes the partners having "executed" both the promissory note and guaranty, implying the borrowers' signatures on the side agreement. *Id.* at 997. As previously stated, it is not certain that Oppman so "executed" the Credit Memorandum. In this review of Plaintiff's Motion for Summary Judgment, however, the Court draws reasonable inferences in favor of the non-movant Defendants, and treats the current issue as though Oppman signed the 2015 Credit Memorandum. (*See* Rec. Doc. 163 at 4). That notwithstanding, as discussed below, the presence of Oppman's signature is not decisive on the *D'Oench, Duhme* issue.

can easily support up to a shortfall of $125M". *Id.*

Expectations differ from agreements. And the quick understanding of agreements is the purpose of the *D'Oench, Duhme* protection. Under *D'Oench*, Defendants cannot rely on select aspects of the Note and related documents, while ignoring others. Nor can they read expectations with a binding force. The Fifth Circuit has reasoned the *D'Oench, Duhme* bar provides an important role despite its possible unfairness:

> This result has been frequently characterized as harsh when considered from the position of a well-intending borrower or lending institution lacking any suggestion of fraud or overreaching. However, *D'Oench, Duhme* provides well reasoned unchallengeable finality to the lender's books and records when used by regulatory agencies to assess the lending institution's degree of solvency.

*Resol. Tr. Corp. v. Oaks Apartments Joint Venture*, 966 F.2d 995, 998 (5th Cir. 1992).

The memoranda now produced do not present a genuine issue of material fact as to the *D'Oench, Duhme* doctrine. Rather, they indicate the Note could be repaid in a manner other than tax credits and was guaranteed by Oppman. Even if those non-tax credit means were not expected to be triggered, they were agreed upon. The written agreement is enough for *D'Oench, Duhme* doctrine purposes. *See Bowen v. Federal Deposit Ins. Corp.,* 915 F.2d 1013, 1016 (5th Cir. 1990) ("The doctrine means that government has no duty to compile oral histories of the bank's customers and loan officers.").

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Carver Theater Productions,

8

LLC and Eugene Oppman's *Motion for Reconsideration or Alternatively for Relief from Judgment* **(Rec. Doc. 159)** is **DENIED**.

New Orleans, Louisiana, this 16th day of December, 2024.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE