UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BY EQUITIES, LLC | CIVIL ACTION |
| VERSUS | NO. 20-1290 |
| | C/W: 20-2540 |
| CARVER THEATER PRODUCTIONS, LLC ET AL. | SECTION: "J"(5) |

Applies to: 20-1290

**ORDER AND REASONS**

Before the Court is a *Motion of BY Equities, LLC for Summary Judgment on the Counterclaim of Carver Theater Productions, LLC and Eugene Oppman* **(Rec. Doc. 197)**, filed by Plaintiff, BY Equities, LLC. Defendants, Carver Theater Productions, LLC and Eugene Oppman, opposed the motion (Rec. Doc. 200), and Plaintiff filed a reply memorandum (Rec. Doc. 201). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that Plaintiff's motion for summary judgment on Defendants' counterclaim should be **GRANTED**.

**FACTS AND PROCEDURAL BACKGROUND**

This matter arises from the redevelopment of the Carver Theater in New Orleans and a promissory note that Carver Theater Productions, LLC executed in January of 2015, payable to First NBC Bank ("FNBC"). When FNBC was closed in April of 2017, the FDIC was appointed as receiver of FNBC. In October of 2017, the FDIC assigned the promissory note to OSK VII, LLC, which subsequently assigned

it to Plaintiff, BY Equities, LLC. Both the Fifth Circuit and this Court have recounted the facts surrounding this litigation in prior orders, and these facts are incorporated herein by reference. *See* Rec. Doc. 135, at 1–3; *BY Equities, L.L.C. v. Carver Theater Productions, L.L.C.*, No. 24-30799, 2026 WL 542632, at *1–2 (5th Cir. Feb. 26, 2026). The Court will focus on the procedural background that is immediately relevant to the instant motion.

This litigation began in April of 2020 and has continued for over six years. On September 17, 2024, the Court granted Plaintiff BY Equities, LLC's motion for summary judgment, denied Defendants Carver Theater Productions, LLC and Eugene Oppman's cross-motion for summary judgment (Rec. Doc. 135,) and entered a Rule 54(b) judgment in Plaintiff's favor on September 30 (Rec. Doc. 140). Thereafter, Defendants filed a motion for reconsideration or alternatively, for relief from judgment pursuant to Rule 60(b) (Rec. Doc. 142), which the Court denied (Rec. Doc. 156).

Defendants subsequently urged the Court to reconsider its order on Defendants' previous motion for reconsideration (Rec. Doc. 159), which the Court again denied (Rec. Doc. 164). Then, Defendants filed their notice of appeal on December 18, 2024, and the Fifth Circuit issued its mandate on March 19, 2026, affirming this Court's judgment in Plaintiff's favor. In the meantime, Defendant Eugene Oppman filed a notice of bankruptcy on July 29, 2025, and the Court issued an order in which it stayed the case pending the resolution of Mr. Oppman's bankruptcy proceedings, but only "to the extent post-judgment matters remain for

this Court's consideration." (Rec. Doc. 181, at 1). At that time, Plaintiff's motion for writ of execution against Defendants was pending. (Rec. Doc. 180).

Shortly after the Fifth Circuit issued its decision on Defendants' appeal, Plaintiff filed the instant motion for summary judgment on Defendants' counterclaim.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When evaluating whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citations omitted). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with "conclusory allegations" or "unsubstantiated assertions." *Little*, 37 F.3d at 1075 (citations omitted). To grant a motion for summary judgment, a court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

**DISCUSSION**

First, Defendants maintain that Plaintiff BY Equities, LLC's motion for summary judgment on their counterclaim is procedurally improper because the Court stayed and administratively closed this matter on July 29, 2025. The Court issued this stay in response to Defendant Eugene Oppman's notice of filing bankruptcy. (Rec. Doc. 178). Defendants urge the Court not to consider the merits of the instant motion based on this automatic stay.

Conversely, Plaintiff relies on the Fifth Circuit's holding in *Matter of U.S. Abatement Corp.* that the "automatic stay of the Bankruptcy Code extends only to actions 'against the debtor.'" 39 F.3d 563, 568 (5th Cir. 1994) (quoting 11 U.S.C. § 362(a)). The court concluded by holding that "[i]f a debtor's offensive claims are not subject to the automatic stay, *a fortiori* a creditor's motion to reinstate and seek summary judgment of such non-stayed claims is not subject to the automatic stay." *Id.* Plaintiff is correct. Accordingly, the Court will lift the stay in this matter for the limited purpose of considering Plaintiff's motion for summary judgment on Defendants' counterclaim.

Next, Plaintiff argues that issue preclusion bars Defendants from pursuing their counterclaim. Specifically, in their second amended answer, Defendants asserted a counterclaim against Plaintiff for fraudulent inducement, forced default, and violations of the Louisiana Unfair Trade Practices Act. Defendants had also raised these issues (fraudulent inducement, forced default, and unfair trade practices) in affirmative defenses. The Court found, after granting additional

discovery, that Defendants' evidence to support their affirmative defenses was insufficient to overcome the *D'Oench, Duhme* doctrine and thereby defeat summary judgment. (Rec. Doc. 135, at 5). Accordingly, the Court must determine whether its prior judgment concerning the affirmative defenses precludes the issues raised in Defendants' counterclaim.

Federal common law determines the preclusive effect of a federal-court judgment. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)); *In re Par.*, 81 F.4th 403, 414 (5th Cir. 2023). "As a matter of federal common law, federal courts sitting in diversity apply the preclusion law of the forum state unless it is incompatible with federal interests." *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020) (citing *Semtek*, 531 U.S. at 508); *In re Par.*, 81 F.4th at 414. Accordingly, Louisiana law will apply in this case.

Louisiana Revised Statutes Section 13:4231 governs both claim and issue preclusion. Concerning issue preclusion, also known as collateral estoppel, the statute provides that a "judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment." La. Stat. Ann. § 13:4231. Under Louisiana law, the following four requirements must be met for a judgment to have issue-preclusive effect: "(1) the parties must be identical; (2) the issue to be precluded must be identical to that involved in the prior action; (3) the issue must have been actually litigated; and (4) the determination of the issue

in the prior action must have been necessary to the resulting judgment." *In re Keaty*, 397 F.3d 264, 270–71 (5th Cir. 2005) (citations omitted).

Here, Defendants argue that issue preclusion does not apply because (1) the issues raised in Defendants' counterclaim are not identical to issues that the Court has already decided; (2) the issues raised in the counterclaim were not actually litigated; and (3) no determination concerning fraud, interference, or unfair business practices was essential to the Court's prior judgment. The Court will address each of these arguments in turn.

Defendants presented three affirmative defenses that relate to their counterclaim. First, in the Sixth Affirmative Defense, Defendants claimed that "[a]ny alleged default with respect to the notes sued on by Plaintiff in this proceeding were caused not by any act or omission of these Defendants but rather by acts or omissions of the Plaintiff and/or its predecessors in interest." (Rec. Doc. 6, at 7). Next, in the Thirteenth Affirmative Defense, which Defendants pleaded in their first amended answer, Defendants alleged that former executives of FNBC, BY's predecessor in interest, made fraudulent misrepresentations that induced Defendants to sign the note. (Rec. Doc. 20, at 3). Lastly, in the Fourteenth Affirmative Defense, Defendants accused Plaintiff of acquiring the note "through fraud and conspiracy to commit fraud, and/or violations of the Louisiana Unfair Trade Practices and Consumer Protection Act." (Rec. Doc. 130, at 2). When the Court granted summary judgment for Plaintiff on all claims, it explicitly concluded that Defendants had not met their burden with

respect to their affirmative defenses, which the Court found were barred by the *D'Oench, Duhme* doctrine.

Defendants' counterclaim accuses Plaintiff of fraud and violation of the Louisiana Unfair Trade Practices Act. Specifically, Defendants alleged in their counterclaim that "BY entered into a conspiracy to defraud and to in fact defraud [Defendants] and, unknown to [Defendants], compete with [Defendants] for acquisition of the Note in question in this litigation." (Rec. Doc. 130, at 3).

According to Defendants, the issues raised in the affirmative defenses are not identical to those raised in the counterclaim. Defendants contend that the "prior proceedings addressed **ONLY** whether Defendants' allegations of fraud, interference, and unfair conduct were sufficient **to defeat enforcement of a promissory note**." (Rec. Doc. 200, at 5). The counterclaim, they argue, "presents a **distinct, new issue**: whether BY Equities is affirmatively liable for damages arising from that same misconduct." *Id.* Defendants also maintain that their counterclaim involves different legal standards, different burdens of proof, and different forms of relief. However, they do not explain how or why this is the case.

Concerning Defendants' allegations that Plaintiff committed fraud, for example, Defendants would have to prove the same elements to prevail on either an affirmative defense or a counterclaim. This Court already ruled, and the Fifth Circuit affirmed, that Defendants did not present sufficient evidence to prove their affirmative defenses and thereby defeat Plaintiff's motion for summary judgment. Defendants have not presented any new evidence concerning their counterclaim,

which rests on the same allegations of "fraud, interference, and unfair conduct" that composed Defendants' affirmative defenses. Therefore, the Court finds that the issues raised in the counterclaim are identical to those already addressed in the Court's previous order and judgment.

Next, Defendants assert that these issues were not actually litigated when the Court and the Fifth Circuit reached decisions concerning Plaintiff's motion for summary judgment. Their opposition reads as follows: "The prior rulings make NO factual findings that BY Equities did not engage in fraud, interference, or unfair trade practices. Instead, the Fifth Circuit expressly framed its decision in terms of evidentiary insufficiency, emphasizing the 'absence of competent material evidence' and characterizing Defendants' position as 'speculation.'" (Rec. Doc. 200, at 6). Defendants claim that this alleged distinction is both "critical" and "dispositive." *Id.* However, the Court holds that it is a distinction without a difference. The Court does not have to find that BY conclusively did *not* engage in fraud, interference, and unfair trade practices in order to grant summary judgment on Defendants' counterclaim. That is not the legal standard or test at issue. Instead, Defendants bore the burden to provide sufficient evidence that would indicate a genuine dispute of material fact concerning BY's alleged fraud, interference, and trade practices. They failed to do so, and this failure to provide adequate evidence on their affirmative defenses clearly demonstrates that they could not provide sufficient evidence on their counterclaim, either.

Additionally, Defendants assert that with respect to their counterclaim, the Fifth Circuit reached "a determination about the sufficiency of the record, not a finding that the underlying facts do not exist." *Id.* at 2. They proceed to argue that "the very evidentiary gap alluded to by the Fifth Circuit is the result of Defendants' inability to conduct discovery, particularly in light of the bankruptcy stay." *Id.* However, according to the final scheduling order in this matter (Rec. Doc. 89), which was issued on July 27, 2023, the Court ordered that discovery should be completed not later than August 27, 2024. Moreover, the scheduling order provided that all pre-trial motions should be filed and served in sufficient time to permit hearing thereon no later than September 4, 2024. The Court granted Plaintiff's motion for summary judgment after this deadline on September 17, 2024.

Even more relevant, in November of 2020, the Court denied a motion for summary judgment filed by Plaintiff based on the Court's determination that Defendants' affirmative defense of fraudulent inducement would benefit from additional discovery. (Rec. Doc. 31, at 7). Four years later, when the Court granted Plaintiff's motion for summary judgment, the Order and Reasons explicitly referenced this previous order and concluded that the evidence Defendants obtained through additional discovery was not sufficient "to surmount the *D'Oench, Duhme* doctrine." (Rec. Doc. 135, at 6). Although Defendants do not dispute that the *D'Oench, Duhme* doctrine precluded their affirmative defenses, they suggest that the result would be different for their counterclaim. This is simply not the case. This doctrine would apply equally to a counterclaim. Despite Defendants' contention to the

contrary, the Court's previous determination concerning fraud, interference, and unfair practices was essential to the Court's decision to grant Plaintiff's motion for summary judgment, and the Fifth Circuit affirmed this ruling. For these reasons, the Court finds that Defendants are precluded from pursuing their counterclaim based on collateral estoppel.

Furthermore, the Court previously ordered that Third-Party Plaintiffs, Carver Theater Productions, LLC and Eugene Oppman, and Third-Party Defendants, Ashton Ryan and Brad Calloway, file into the record memoranda on their respective positions on Third-Party Plaintiffs' pending claim. Neither the Third-Party Plaintiffs nor the Third-Party Defendants filed memoranda, and therefore, the Court will dismiss Third-Party Plaintiffs' claim without prejudice.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the *Motion of BY Equities, LLC for Summary Judgment on the Counterclaim of Carver Theater Productions, LLC and Eugene Oppman* **(Rec. Doc. 197)** is **GRANTED**, and Defendants' counterclaim against Plaintiff is hereby **DISMISSED**, **with prejudice**.

**IT IS FURTHER ORDERED** that the claim of Third-Party Plaintiffs, Carver Theater Productions, LLC and Eugene Oppman, against Third-Party Defendants, Ashton Ryan and Brad Calloway, is hereby **DISMISSED**, **without prejudice**.

New Orleans, Louisiana, this 21st day of September, 2026.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE